F I L E D
Clerk
District Court

NOV 07 2024

for the Northern Mariana Islands
By_____
*JP*
(Deputy Clerk)

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN MARIANA ISLANDS**

IRWIN DUANE I. TEREGEYO,

                Plaintiff,

   v.

ADMISEN HADDY and AMBROS DELONG,

                Defendants.

Case No. 1:23-cv-00003

**MEMORANDUM DECISION
DENYING DEFENDANT
ADMISEN HADDY'S
MOTION TO DISMISS**

      Defendant Admisen Haddy's Motion to Dismiss ("Mot.," ECF No. 45) *pro se* Plaintiff

Irwin D. I. Teregeyo's Second Amended Complaint ("SAC," ECF No. 43) came before the Court

for a hearing. (Mins., ECF No. 61.) Haddy's motion was pursuant to Federal Rule of Civil

Procedure 12(b)(6) asserting that Teregeyo failed to exhaust his administrative remedies under

the Prison Litigation Reform Act ("PLRA"). (Haddy's Mem. Law 3-4, ECF No. 45-1.) Teregeyo

filed an Opposition (ECF No. 49), to which Haddy replied (ECF No. 51). At the conclusion of

the hearing, the Court denied Haddy's Motion. The Court sets forth its reasoning in denying

Haddy's motion below.

**I.**      **BACKGROUND**

      Teregeyo is an inmate with the Commonwealth of the Northern Mariana Islands ("NMI")

Department of Corrections ("DOC") starting in 2018. (IFP Appl. 5, ECF No. 1.) Teregeyo asserts

a failure to protect claim in violation of the Eighth Amendment of the U.S. Constitution against

DOC Officers Admisen Haddy and Ambros Delong. (SAC 5.) Although the date of the

underlying incident was October 18, 2022, Teregeyo did not file a grievance form with the DOC

until November 19, 2023. (*Id.* at 10.)

Teregeyo included his filed grievance form in his SAC. (*Id.*) The grievance form DOC provided to him indicates it was revised in February 2020. (*Id.*) Teregeyo wrote in the description of grievance space, "I was assaulted by inmate Marlon Martin who is under Administrative Seg. on the day of Oct 18, 2022. Inmate Marlon Martin was released out to the general population by officer Admisen Haddy." (*Id.*) Teregeyo's requested action was "[t]o address this issue of officers incompetence." (*Id.*) Teregeyo signed and dated the grievance form November 19, 2023, and it was logged one day later. (*Id.*) DOC's response to Teregeyo's grievance, indicated in the same form, was that "[i]nmate Marlon Martin charged with DPS, Extended Administrative Segregation. Transfer Irwin Teregeyo to Pod 2 away from Marlon." (*Id.*) Once the grievance form was returned to Teregeyo, he appealed the decision, signed and dated the form November 21, 2023. (*Id.*) There is no written decision by DOC that follows under the "Administrative: Appeal Review" portion of the grievance form. (*Id.*)

In regards to the DOC grievance process, Teregeyo was "told that [he] can write a grievance, but wasn't taught of its procedures. The rules, regulations, and procedures were never taught to [him]." (*Id.* at 12.) Further, when Teregeyo inquired about the grievance process, "Lt. Billy informed [him] that the prison handbook for the rules and regulations/procedures isn't available to the inmates as it is being revised." (*Id.*)

## II.   LEGAL STANDARD

### A.  The PLRA's Exhaustion Requirement for § 1983 Claims

Congress enacted the PLRA of 1995 in response to a sharp rise in prisoner litigation in federal courts with provisions designed to bring the litigation under control. *Woodford v. Ngo*, 548 U.S. 81, 83 (2006). In particular, the PLRA strengthened inmates' obligation to exhaust their administrative remedies. *Id.* at 85.

Specifically, the PLRA dictates that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "Exhaustion is no longer left to the discretion of the district court, but is mandatory." *Woodford*, 548 U.S. at 85 (citing *Booth v. Churner*, 532 U.S. 731, 739 (2001)).

The Supreme Court in *Woodford* addressed whether an inmate who failed to comply with administrative remedy deadlines by filing a late grievance properly exhausted his claims under the PLRA. *Id.* at 83, 86-87. The Supreme Court ruled that failing to comply with administrative remedy deadlines did not meet the PLRA requirements for exhaustion and that "the PLRA exhaustion requirement requires *proper* exhaustion." *Id.* at 93 (emphasis added). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id.* at 90-91.

The Supreme Court reaffirmed its ruling in *Woodford* when it stated, "*Woodford* held that 'proper exhaustion' was required under the PLRA, and that this requirement was not satisfied when grievances were dismissed because prisoners had missed deadlines set by the grievance policy." *Jones v. Bock*, 549 U.S. 199, 217-18 (2007) (citing *Woodford*, 548 U.S. at 93-95).

However, the PLRA only requires inmates to exhaust *available* administrative remedies—not those unavailable. *Ross v. Blake*, 578 U.S. 632, 642 (2016) (quoting *Booth*, 532 U.S at 737-38) ("An inmate, that is, must exhaust available remedies, but need not exhaust unavailable ones.") "To be available, a remedy must be available 'as a practical matter'; it must

be 'capable of use; at hand.'" *Albino v. Baca*, 747 F.3d 1162, 1169 (9th Cir. 2014) (quoting *Brown v. Valoff*, 422 F.3d 926, 936-37 (9th Cir. 2005)) (citing *Booth*, 532 U.S. at 736)).

The Supreme Court has identified "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." *Ross*, 578 U.S. at 633.

> First, an administrative procedure is unavailable when it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates. Next, an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use—*i.e.,* some mechanism exists to provide relief, but no ordinary prisoner can navigate it. And finally, a grievance process is rendered unavailable when prison administrators thwart inmates from taking advantage of it through machination, misrepresentation, or intimidation.

*Id.*

### B. Federal Rule of Civil Procedure 12(b)(6) Defense for Plaintiff's Failure to Exhaust Administrative Remedies

The Ninth Circuit originally held that the proper procedural device for defendants to raise an exhaustion defense was an unenumerated 12(b) motion. *Albino*, 747 F.3d at 1168. After the U.S. Supreme Court issued its 2007 decision in *Jones*, the Ninth Circuit held that "an unenumerated motion under 12(b) is not the appropriate procedural device for pretrial determination of whether administrative remedies have been exhausted under the PLRA." *Id.*

When a defendant raises an affirmative defense of failure to exhaust administrative remedies under Rule 12(b)(6), they may only succeed under 12(b)(6) if "failure to exhaust is clear from the face of the complaint." *Id.*

///

//

/

"To properly be considered on a Rule 12(b)(6) motion, the nonexhaustion defense must raise no disputed issues of fact." *Blomdahl v. Jaffe*, No. CV 19-00227-PHX-MTL (DMF), 2020 WL 1432834, at *2 (D. Ariz. Mar. 24, 2020) (citing *Scott v. Kuhlmann*, 746 F.2d 1377, 1378 (9th Cir. 1984)).

Moreover, "[i]n determining the proprietary of a Rule 12(b)(6) dismissal, a court may not look beyond the complaint to a plaintiff's moving papers such as a memorandum in opposition to a defendants' motion to dismiss. . . . The focus of any Rule 12(b)(6) dismissal—both in the trial court and on appeal—is the complaint." *Schneider v. Cal. Dep't of Corrections*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) (citations omitted). "[C]ourts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which the court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (citation omitted).

A complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint that fails to meet this standard may be dismissed pursuant to Rule 12(b)(6). The U.S. Supreme Court has held that Rule 8(a) requires a plaintiff to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. (internal quotation marks omitted).

For purposes of a Rule 12(b)(6) motion, the Court "accept[s] all factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving

party." *Manzarek v. St. Paul Fire & Marine Ins., Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). But the Court need not "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per curiam) (internal quotation marks omitted). Mere "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004).

## III.    DISCUSSION

Haddy made three main arguments. He argued that Teregeyo's SAC should be dismissed pursuant to Rule 12(b)(6) because: (1) Teregeyo does not satisfy PLRA exhaustion requirements because he did not comply with the NMI DOC's fifteen-day deadline nor wait to receive a "final decision" on his grievance form (Haddy's Mem. Law 3-4); (2) administrative remedies were not unavailable to Teregeyo (*id.* at 5); and (3) he failed to properly exhaust administrative remedies because Teregeyo's grievance was insufficient to alert the DOC of the problem for which he now seeks redress (*id.* at 6).

The Court finds under the 2016 NMI Administrative Code ("NMIAC"), an inmate need not file his grievance within fifteen days of the alleged incident nor wait to receive a "final decision." Even if the 2021 NMIAC were applicable, the Court finds that Teregeyo exhausted *available* administrative remedies. And finally, the Court finds that Teregeyo's grievance sufficiently alerted the DOC of the problem for which he now seeks redress.

### A. Teregeyo Satisfied the PLRA Exhaustion Requirements Under the 2016 NMIAC

Teregeyo's grievance under the 2016 NMIAC was not untimely nor was Teregeyo required to appeal the disposition of his grievance to exhaust his administrative remedies under the PLRA.

In 2018, when Teregeyo entered the DOC, the 2016 NMIAC governing the NMI DOC inmates was in effect. (IFP Appl. 5.) During his time at the DOC, he was not taught or informed of the DOC's grievance regulations under the Administrative Code or requirements that were already in effect. (SAC 12.) When Teregeyo inquired into the grievance process in 2022, "Lt. Billy informed [him] that the prison handbook for the rules and regulation/procedures isn't available to the inmates as it is being revised." (*Id.*) Further, Teregeyo "told Lt. Billy that we can't possibly be aware of the procedures when even his officers aren't informed about the rules and procedures regarding grievances and other areas creating concerns. Lt. Billy then told [him] to be patient until the handbook is complete. . . ." (*Id.*) Taking the facts alleged in Teregeyo's SAC as true, which the Court must do, Teregeyo was not provided with the 2016 NMIAC nor the updated 2021 NMIAC. *See Manzarek*, 519 F.3d at 1031.

Additionally, the grievance form DOC provided Teregeyo in 2023 and which he attached to his SAC was revised in February 2020, which is prior to the enactment of the 2021 NMIAC. (SAC 10.) This is evident from the notation at the bottom of the grievance form. (*See id.*) Also, the 2021 NMIAC indicates sections that were to be made a part of the grievance form but that do not exist on the actual grievance form the DOC provided to Teregeyo—such as an "OFFICE USE ONLY box." NMIAC § 57-20.1-701(V), 57-20.1-710(11), 57-20.1-725(b) (2021).

The fifteen-day deadline Haddy seeks to impose on Teregeyo exists only in the 2021 NMIAC, not in the 2016 NMIAC. However, according to the SAC, the DOC officers never informed Teregeyo of the update from the 2016 NMIAC to the 2021 NMIAC. (SAC 12.) Nor when Teregeyo inquired was he informed of the regulations and procedures for filing a grievance in general. (*Id.*) Last, the grievance form DOC provided does not comply with the 2021 NMIAC, but rather the 2016 NMIAC. (*See id.* at 10.) For these reasons, the Court finds that, although the 2021 NMIAC was enacted at the time of Teregeyo's incident for which he filed a grievance, the

2016 NMIAC was operative at the DOC, and therefore, the administrative remedies that were available to Teregeyo were those outlined in the 2016 NMIAC.

Turning to the 2016 NMIAC, there is no regulation that requires a prisoner to file a grievance form fifteen days from the date of an alleged incident. *See generally* 57 NMIAC pt. 700. Nor is there a regulation requiring a prisoner to file an appeal of a DOC decision. *See generally id.* NMIAC § 57-20.1-710 dictates that grievances are normally forwarded to the Chief of Corrections and within one week, the Chief of Corrections will institute any necessary action. NMIAC § 57-20.1-710 (2016). Thereafter, the Chief of Corrections will provide a written response regarding the disposition of the grievance. *Id.* "If the prisoner feels that the response is insufficient, he has recourse to legal action in the court through his attorney should the attorney feel there are sufficient grounds for legal action." *Id.* Therefore, Teregeyo exhausted his administrative remedies because there is no fifteen-day time requirement, and Teregeyo waited to receive his grievance back after filing it.

**B. Even if the 2021 NMIAC is Applicable, Teregeyo Exhausted *Available* Administrative Remedies**

The PLRA only requires inmates to exhaust *available* administrative remedies—not those unavailable. *Ross*, 578 U.S. at 642 ("An inmate, that is, must exhaust available remedies, but need not exhaust unavailable ones.") "To be available, a remedy must be available 'as a practical matter'; it must be 'capable of use; at hand.'" *Albino*, 747 F.3d at 1169 (quoting *Brown*, 422 F.3d at 936-37) (citing *Booth*, 532 U.S. at 736).

Here, out of the three circumstances identified by the Supreme Court in *Ross*, in which an administrative remedy is officially on the books but is incapable of use, the 2021 NMIAC is so opaque that it becomes, practically speaking, incapable of use. *Ross*, 578 U.S. at 643. In the situation where administrative remedies are so opaque, "some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." *Id.* at 644.

Teregeyo was not taught the procedures of the 2021 NMIAC. (SAC 12.) He only learned about the rules, regulations, and procedures from other inmates. (*Id.*) Further, when Teregeyo inquired as to the rules, regulations, and procedures he must follow, "Lt. Billy informed [him] that the prison handbook for the rules and regulation/procedures isn't available to the inmates as it is being revised." (*Id.*) After, Teregeyo told Lt. Billy that inmates could not possibly be aware of the procedures if the officers are not even informed. (*Id.*) "Lt. Billy then told [Teregeyo] to be patient until the handbook is complete, it will then be distributed to all inmates." (*Id.*)

Taking these facts as true, the 2021 NMIAC directing Teregeyo to file his grievance within fifteen days of his incident and requiring him to appeal DOC's decision, were not made available to him. *See Manzarek*, 519 F.3d at 1031 (The Court "accept[s] all factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party.") In fact, when Teregeyo inquired about the proper procedures, Lt. Billy instructed him to be patient and DOC would eventually distribute the procedures. (SAC 12.) Based on these facts, the Court concludes that from the face of the SAC, it is not clear that Teregeyo failed to exhaust *available* administrative remedies.

Finally, Haddy relies on the Ninth Circuit case *Albino*, to assert Teregeyo did not meet his burden to provide evidence that DOC's administrative remedies were unavailable to him. (Haddy's Mem. Law 5.) Haddy recognized that "the defendant's burden is to prove that there was an available administrative remedy, and that the prisoner did not exhaust that available administrative remedy." *Albino*, 747 F.3d at 1172; (*see* Haddy's Mem. Law 5 (citing *Albino*, 747 F.3d at 1172)). The Court finds that Haddy failed to meet his initial burden, and therefore the burden did not shift to Teregeyo.

Specifically, Haddy asserted at the motion hearing that Teregeyo did not exhaust the available appeal process before filing his SAC. However, Teregeyo checked the appeal box on

his grievance form. (SAC 10.) As discussed above, the Court found that the 2021 NMIAC was inapplicable to Teregeyo because DOC never provided Teregeyo the 2021 requirements, and therefore, those remedies in the 2021 NMIAC were not available to Teregeyo. The fifteen-day deadline and appeal process were never communicated to Teregeyo, and were not indicated in any notice, handbook, *or form* given to Teregeyo.

### C. Teregeyo's Grievance Was Sufficient to Alert the DOC of the Problem for Which He Now Seeks Redress

Haddy's final argument also fails to support the grounds for his Motion. The details in a grievance form necessary to properly exhaust administrative remedies is "determined by the applicable grievance procedures." *Morton v. Hall*, 599 F.3d 942, 946 (9th Cir. 2010) (citing *Jones*, 549 U.S. at 218). Even assuming the application of the more detailed 2021 NMI DOC regulations, they dictate that "[i]nmates must state the nature of the grievance on a single grievance form in the space provided." NMIAC § 57-20.1-710 (2021). This regulation does not specify the level of detail required by an inmate, and the form actually provided to him did not indicate such a requirement as well.

If a grievance procedure is silent or incomplete as to the factual specificity required, the contents of a grievance is sufficient to properly exhaust one's administrative remedies if it alerts the prison to the nature of the wrong for which redress is sought. *Morton*, 599 F.3d at 946 (citing *Griffin v. Apaio*, 557 F.3d 1117, 1120 (9th Cir. 2009)); *Sapp v. Kimbrell*, 623 F.3d 813, 824 (9th Cir. 2010). This allows prison officials "to take appropriate responsive measures." *Griffin*, 557 F.3d at 1120-21.

In *Schroder v. Christensen*, the district court reasoned that "[t]o exhaust a claim, a prison grievance, liberally construed, must have the same subject and same request for relief as the plaintiff's complaint." No. 1:20-cv-00583-DCN, 2021 WL 5702150, at * 1 (D. Idaho Dec. 1, 2021) (citing *Hill v. McGarth*, No. C 07-00149 JF (PR), 2008 WL 3823042, at *2 (N.D. Cal.

Aug. 13, 2008)). In *Schroder*, the plaintiff slipped in a pool of water and fell, injuring himself. *Id.* at *2. Plaintiff filed a grievance about six months later alleging he notified defendants verbally about the flooding problem and asked that they fix the leak as promised. *Id.* Plaintiff asked for damages only in his complaint filed with the court. *Id.* The district court ultimately granted summary judgment to the defendants because the "prison officials deserve to have notice when someone in particular, here, Plaintiff, has injured himself and is seeking a million dollars in damages." *Id.* at *3.

The Ninth Circuit affirmed in part and reversed in part. *Schroder v. Christensen*, No. 22-35006, 2023 WL 561305, at *1 (9th Cir. Jan. 27, 2023). For the plaintiff's "conditions-of-confinement claim alleging that prison officials failed to remedy the flooding in his cell in October 2020" the district court granted summary judgment and "determined that although [plaintiff] fully exhausted his October grievance related to this claim, that grievance was insufficient to exhaust his claim for damages because the grievance asked the prison to fix the leak in his cell and did not seek damages." *Id.* However, the Ninth Circuit found that his grievance was sufficient to put the prison on adequate notice of the continued flooding, which is all that was required. *Id.* Therefore, the Ninth Circuit reversed the district court's decision on this part and found that the plaintiff exhausted his administrative remedies. *Id.*

Here, although Teregeyo did not expressly request monetary relief in his grievance form, he did inform the prison of the assault by Marlon Martin and officer's "incompetence," which is sufficient to put the prison on notice. (SAC 10.) Therefore, Teregeyo exhausted his administrative remedies.

## IV.   CONCLUSION

The Court finds under the 2016 NMIAC, an inmate need not file his grievance within fifteen days of the alleged incident nor wait to receive a "final decision." Even if the 2021

NMIAC were applicable, the Court finds that Teregeyo exhausted *available* administrative remedies. And finally, the Court finds that Teregeyo's grievance sufficiently alerted the DOC of the problem for which he now seeks redress. Therefore, the Court denies Haddy's Motion.

IT SO ORDERED this 7th day of November 2024.

_____
Ramona V. Manglona
Chief Judge